**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| JOSE FRANCISCO VELIZ BENITEZ,<br><br>        Petitioner,<br>    v.<br><br>FERETI SEMAIA, et al.,<br><br>        Respondents. | No. 5:26-cv-02780-AYP<br><br>**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS** |

**I.   SUMMARY**

Petitioner Jose Francisco Veliz Benitez ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). Petitioner is currently in the custody of the Immigration and Customs Enforcement ("ICE") at the Adelanto Detention Facility. Upon his initial entry into the United States in 2018, immigration authorities apprehended the Petitioner and released him on bond. Following his apprehension in 2018, Petitioner was placed in removal proceedings, and his immigration case was administratively closed in 2021. On January 25, 2026, Petitioner was suddenly detained by ICE while driving to work and has remained in ICE custody at the immigration detention facility since such time.

In this habeas action, Petitioner challenges the legality of his re-detention

and continued civil confinement, asserting that Respondents violated the Due Process Clause of the Fifth Amendment by revoking his liberty without notice, without a hearing, and without any individualized determination that detention was warranted.

Consistent with several recent decisions in this District, and having reviewed the record, the Court concludes that Petitioner's re-detention on January 25, 2026—without notice, without a hearing, and without any individualized determination that detention was warranted—violates due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and barring future re-detention absent adequate pre-deprivation notice and a hearing.

## II.   FACTS AND PROCEDURAL HISTORY

Petitioner represents that he is a native and citizen of Honduras. (Dkt. No. 1 at 2.) Petitioner contends that he entered the United States without inspection on or about 2018. *Id.* Petitioner asserts that he was held in ICE custody for approximately two (2) months before he was released on bond. *Id.* Petitioner asserts that his removal proceedings were administratively closed in approximately 2021. *Id.*

Petitioner asserts that he has resided in the United States for nearly eight (8) years. (Dkt. No. 1 at 2.) Petitioner contends that during this time he has maintained gainful employment and built ties to the community. *Id.* Petitioner represents that he has no criminal history. (Dkt. No. 1 at 11.)

Petitioner asserts that ICE suddenly re-detained him on January 25, 2026, while he was driving to work. (Dkt. No. 1 at 2.) Petitioner contends that following his arrest he did not receive a hearing or any individualized determination as to whether his detention is necessary. *Id.* Petitioner asserts

that he remains in ICE custody at the Adelanto Detention Facility as of the filing of the instant Petition. (Dkt. No. 1 at 11.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 on May 22, 2026. (Dkt. No. 1.) Respondents filed their Response (the "Response") on May 29, 2026. (Dkt. No. 9.) Petitioner filed a Reply (the "Reply") on May 31, 2026. (Dkt. No. 10.) Both parties have consented to proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III.    DISCUSSION

Petitioner argues that his re-detention and ongoing confinement violate the Fifth Amendment's guarantee of due process because Respondents revoked his conditional liberty and re-detained him at a routine check-in without notice, without a meaningful opportunity to be heard, and without any material change in circumstances. Petitioner therefore seeks immediate release, asserting that his re-detention lacked the constitutional safeguards required under the Fifth Amendment Due Process Clause.

The Respondents argue that Petitioner is a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). Therefore, Respondents contend that any relief available would be limited to an order directing a bond hearing before an IJ under § 1226(a). Respondents do not address Petitioner's due process claim or other claims.

### A. The Court Has Subject Matter Jurisdiction

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to

noncitizens challenging executive detention." *Id.* (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of Petitioner's due process claim.

**B. Petitioner's Detention Violates Due Process.**

Petitioner argues that his sudden re-detention—after ICE released him on bond, administratively closed his removal proceedings, and he has been residing freely in the community for eight (8) years—violates the Fifth Amendment's guarantee of due process. As an initial matter, the Court observes that Respondents did not respond to Petitioner's due process claim in their Response to the Petition. (Dkt. No. 9.) Consistent with precedent, courts in this Circuit have regarded such silence as a concession. *See e.g.*, *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession). The Court notes Respondents' position and independently evaluates the merits of Petitioner's due process challenge.

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due

4

process of law. Freedom from physical restraint lies at the core of this protection. *See Zadvydas*, 533 U.S. at 690–91.

When ICE released Petitioner into the United States upon their initial encounter in 2018 (Dkt. No. 1 at 2), it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

Read together with the recent decisions in this District addressing sudden re-detention of compliant noncitizens, these authorities underscore the principle that where a noncitizen has lived in the community under parole or supervision-based release and has remained fully compliant, the Government may not revoke that conditional liberty without first affording constitutionally sufficient pre-deprivation process or identifying a material intervening change in circumstances.

The Court analyzes Petitioner's due process claim under the familiar Mathews v. Eldridge framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs strongly in Petitioner's favor.

**1. Private Interest**

Petitioner argues that his sudden re-detention on January 25, 2026, without notice, without a meaningful opportunity to be heard, and without any

material change in circumstances, violates the protections of Fifth Amendment due process.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d 1025, 1032–33 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after

6

that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that due process principles prohibit Respondents from revoking his release and re-detaining him absent adequate pre-deprivation process.

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining his settled life out of custody. Petitioner asserts Petitioner asserts that he has resided freely in the United States for nearly eight (8) years, he has no criminal history, and he has maintained gainful employment and built ties to the community. (Dkt. No. 1 at 2 and 11.) While Petitioner remained subject to the authority of the immigration laws and regulations during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles h[er] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases).

In consideration of the guiding principles and relevant authority, and the undisputed record of Petitioner's lengthy and compliant period of supervised release, the Court finds that Petitioner's interest in remaining at liberty is both substantial and well-established. Accordingly, the Court concludes that the Due Process Clause protects Petitioner's substantial interest in maintaining his freedom from confinement. *See Cruz*, 2025 WL 4051129 at 2–6; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025)

(same, with respect to "nearly four years" of parole). *See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to articulate any change in circumstance preceding Petitioner's re-detention creates a significant risk of erroneous deprivation. Civil immigration detention is constitutionally permissible only to prevent flight or protect the community from danger. *Zadvydas*, 533 U.S. at 690–91. Yet nothing in the record suggests that Petitioner's continued release threatened either interest at the time of his re-detention on January 25, 2026.

First, Respondents identify no material change in circumstances arising between the time of Petitioner's release in 2018 and his re-detention on January 25, 2026. There are no allegations of criminal conduct, no supervision violations, and no new facts in the record that would lead a reasonable officer to conclude that Petitioner suddenly became a danger or flight risk at the time of his re-detention on January 25, 2026. As both *Matter of Sugay* and *Saravia* make clear, DHS may not revoke a prior release determination absent such materially changed circumstances. *Matter of Sugay* 17 I. & N. Dec. 637, 640 (B.I.A 1981); *Saravia*, 280 F. Supp. 3d at 1196–97.

Second, the procedure employed here creates a substantial risk of error. Petitioner alleges that he was re-arrested when he stopped for food on his way to work. (Dkt. No. 1 at 2.) As *Saravia* explained, due process in this context requires a prompt, pre-deprivation hearing before a neutral decisionmaker at the time of rearrest, not some time long after the liberty loss has already occurred. *Saravia,* 280 F. Supp. 3d at 1194–97. The court in *Cruz v. Lyons*, considering a similar re-detention at a routine appointment without prior

8

notice, likewise concluded that such procedures pose a constitutionally unacceptable risk of erroneous deprivation. *See Cruz*, 2025 WL 4051129 at 4.

The record before the Court indicates that Petitioner resided freely in the United States for nearly eight (8) years, he has no criminal history, and he has maintained gainful employment and built ties to the community. (Dkt. No. 1 at 2 and 11.) Yet, despite Petitioner's unbroken record of compliance, Respondents provided no advance process to assess whether revoking his release would further the permissible purposes of immigration (Dkt. No. 1 at 2.) Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process. On this record, the Court concludes that the risk of erroneous deprivation is unacceptably high.

### 3. Government Interest

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who has been safely residing in the community.

Courts considering similar re-detentions have consistently concluded that the Respondents' interest in bypassing pre-deprivation procedures is low. *Cruz v. Lyons* held that, where a noncitizen has long been released and compliant, the Respondents have no meaningful countervailing interest in effecting a sudden re-detention without a hearing, particularly because ICE routinely conducts custody hearings and the administrative burden of providing one is minimal. *See* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). Likewise, in *López*, the court emphasized that immigration custody hearings are "routine and impose a minimal cost," and that the government's interest in re-arresting a compliant supervisee without a hearing

is "low." 2025 WL 2959319, at \*6 (cleaned up). *Garro Pinchi* similarly held that due process requires the Government to identify an interest "beyond its own administrative practices" to justify depriving an individual of liberty without pre-deprivation protections, and that detention "for its own sake" or due to the absence of established procedures is not a legitimate governmental interest. 792 F. Supp. 3d at 1035–36.

These decisions align with broader Ninth Circuit authority recognizing that the Government has no legitimate interest in detaining individuals who can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). They also reflect *Saravia*'s conclusion that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Here, Respondents identify no operational, administrative, or public-safety reasons that would have prevented the Respondents from providing Petitioner with pre-deprivation notice or a meaningful opportunity to be heard, nor do they articulate any individualized risk that could justify dispensing with such safeguards.  On the record before the Court, Respondents' interest in re-detaining Petitioner absent the constitutionally protected pre-deprivation procedures due—without any justification or prior notice while he was engaged in a mundane daily activity—is exceptionally weak. Under *Mathews*, the Government has no interest in bypassing pre-deprivation process in these circumstances.

Accordingly, the third *Mathews* factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Respondents' lack of

10

constitutionally adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Respondents' re-detention of Petitioner on January 25, 2026, without adequate pre-deprivation process violated due process and that he should be released forthwith.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Jose Francisco Veliz Benitez's (A#215732628) immediate release and restoration of liberty to the conditions existing prior to his re-detention on January 25, 2026, along with his personal belongings, including his identification, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine him prior to his re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.  Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED:   July 21, 2026

_____
ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

11